# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DWIGHT EDEN,**

      **Petitioner,**

**v.**                                                                            Civil Action No. 2:07cv40
                                                                                        (Judge Maxwell)

**JOYCE FRANCIS, Warden,**

      **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

The above styled case is before the undersigned for consideration of the *pro se* petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, the government's response, and the petitioner's reply. In the petition, the petitioner challenges a disciplinary proceeding that resulted in the loss of good conduct credit.

### I. Factual and Procedural History

**A.**   **Petitioner's Disciplinary Proceedings**

On July 26, 2006, the petitioner received an incident report in which he was charged with a violation of prohibited act code 224, assaulting any person.[1] The report stemmed from an incident earlier that day when the petitioner attempted to flush a red bag down a toilet. More specifically, the report alleged that during a visual search of the petitioner in a Lieutenant's office, the petitioner ran from the room toward a female restroom. During his pursuit of the petitioner, Officer I. Pagan, was allegedly pushed and shoved by the petitioner. As a result, Officer Pagan grabbed the petitioner's upper torso in an attempt to secure him. At this time, both the petitioner and Officer Pagan fell to

---

[1] For a copy of the incident report see Resp't Response (dckt. 6), Ex. 1 at Att. 1.

the floor where the petitioner continued to push and kick while attempting to flush the red bag down the toilet. During this struggle, Officer Pagan sustained injuries to his right elbow, left knee and right arm.

The incident report was initially suspended because the matter was referred to the Federal Bureau of Investigation ("FBI") for possible prosecution.[2] However, the United States Attorney's Office chose not to bring federal charges and the matter was released back to the BOP for administrative proceedings. Petitioner then received a copy of the incident report on August 24, 2006. When provided the opportunity to make a statement, the petitioner stated, "no comment."

On August 25, 2006, a Unit Disciplinary Committee ("UDC") hearing[3] was held. At that hearing, the petitioner was again provided an opportunity to make a statement, which he chose not to do. The charges were referred to a Disciplinary Hearing Officer ("DHO") for further proceedings.[4] Moreover, the UDC recommended that the DHO impose sanctions of 30 days disciplinary segregation, loss of all good conduct time and a disciplinary transfer. The petitioner received a copy of a Notice of Discipline Hearing that same day. Resp't Ex. 1 at Att 3. At that time, the petitioner requested a staff representative and expressed his wish to call Lieutenants Lewis, Perez

---

[2] Pursuant to 28 C.F.R. § 541.12(b)(1), "[w]hen it appears likely that the incident may be the subject of criminal prosecution, the investigating officer shall suspend the investigation, and [BOP] staff may not question the inmate until the Federal Bureau of Investigation . . . interviews have been completed or . . . advised that staff questioning may occur."

[3] Pursuant to 28 C.F.R. §§ 541.2 and 541.15, a Unit Disciplinary Committee consists of one or more staff members who hold an initial hearing within 3 working days from the date staff became aware of an incident to determine whether the prohibited act, or a similar one, was committed, not committed, or whether further proceedings are needed.

[4] Pursuant to 28 C.F.R. §§ 541.2, a disciplinary Hearing Officer is an independent hearing officer who conducts disciplinary hearings referred for further action by the UDC and who imposes sanctions if a violation is found.

and Ashley, as well as Officer Kry, as witnesses. The petitioner also received a notice of his rights. Resp't Ex. 1 at Att. 4.

The petitioner's DHO hearing was held on September 25, 2006.[5] The petitioner was again advised of his rights. The petitioner stated that he understood those rights. Moreover, the petitioner stated that he had no documentary evidence to present, but that he wished to call witnesses and to have his requested staff representative. Petitioners' staff representative was present and stated that the petitioner was ready to proceed.

As a preliminary matter, the DHO noted that the petitioner's disciplinary proceedings had been delayed because the charges were referred to the FBI. The DHO also noted that the matter had been released by the United States Attorney's Office and referred to the BOP for further administrative proceedings. The DHO then determined that any delay in the processing of the incident report did not prejudice the petitioner's ability to defend the charges. Therefore, the proceedings continued.

At the DHO hearing, the petitioner gave his version of the events in question:

> I was in the Administrative Lieutenant's Office with Officer Pagan and Lieutenants Perez and Lewis. Lieutenant Lewis left with Counselor Alicia and went into the other office. Lieutenant Lewis was standing at the door. I ran out of office [sic] toward the female bathroom and opened the door with my right hand. I had a red bag which I grabbed out with my left hand from my shorts and threw it in the toilet. As I was flushing the toilet, someone came from behind and I went down to my knee. I was pulled away from the toilet but kept my right hand inside the toilet trying to push the bag through. I leaned over to the side and they placed handcuffs on me.

See Resp't Response at 7. The petitioner also provided a written statement. Id.

---

[5] For a copy of the DHO report, see Resp't Ex. 1 at Att. 2.

Although the petitioner requested to call Lieutenants Lewis, Ashley and Perez as witnesses, that request was denied because those witnesses had already provided written statements of the incident. Moreover, an Inmate Injury Assessment Form and photographs were presented into evidence. Based on this evidence, the DHO found the petitioner guilty as charged. The DHO based his decision on the incident report itself, the written memoranda of the witnesses and the petitioner's failure to initially defend against the charges. Additionally, the DHO noted that although the petitioner denied the charges, the evidence supported a finding of guilty. The petitioner was sanctioned 27 days loss of good conduct time, 30 days disciplinary segregation and disciplinary transfer was recommended. In imposing the sanctions, the DHO noted that assaulting another person is a serious offense which jeopardizes the security and orderly running of the institution and also creates a dangerous environment for staff. The petitioner was advised of the DHO's findings, the evidence relied on, and his right to appeal. The petitioner received a copy of the DHO's written report on September 27, 2006.

**B.    Petitioners' Administrative Appeals**

On October 10, 2006, the petitioner completed a Request for Administrative remedy in which he challenged the findings of the DHO. Pet's Ex. II at Att. 4. The petitioner gave those documents to Mike Rossignol for mailing on October 12, 2006. Id. at Att. 2. The petitioner's appeal was received by the Regional Office on October 23, 2006. Id. at Att. 4.

On October 25, 2006, the petitioner's appeal was rejected because it was not on the proper form and because the petitioner submitted too many continuation pages. Id. at Att. 5. However, the petitioner was advised that he could resubmit his appeal in proper form within 10 days. Id.

On November 4, 2006, the petitioner received a copy of the Regional Office's rejection

notice. Id. at Att. 6. At that time, the 10 day time limit for correcting his mistakes had already lapsed. Thus, petitioners' counselor, G. Gunter, submitted a memorandum verifying that the petitioner did not timely receive a copy of the rejection notice, and requested the petitioner's time be extended. Id. The petitioner then resubmitted his appeal on November 9, 2006. Id. at Att. 7.

The Regional Office received petitioners' resubmission on November 14, 2006. Id. at Att. 8. For unexplained reasons, the Regional Office considered the resubmission a new appeal and rejected the appeal as untimely. Id. at Att. 9. Moreover, the Regional Office noted that when providing staff verification of untimeliness, such verification must be on BOP letterhead, all information must be complete and without error, and include the signature of staff. Id.

On February 13, 2007, the petitioner appealed the rejection of his Regional Appeal to the Central Office.[6] Id. at Att. 11. In this appeal, the petitioner asserted that his resubmission was improperly rejected by the Regional Office, and that under the BOP's own regulations, he should have been given the opportunity to correct any mistakes. Id. On February 24, 2007, the denial of the petitioner's Regional Appeal was upheld by the Central Office. Id. at Att. 12. In doing so, the Central Office noted that the appeal to the Regional Office was untimely because it was not received within 20 days of the petitioner's receipt of the DHO report. Id. Thus, it is apparent that the Central Office also considered the petitioner's appeal a second appeal, rather than a resubmission, when it concurred with the findings of the Regional Office.

## II. The Pleadings

**A. The Petition**

In the petition, the petitioner asserts that he is entitled to relief for the following reasons:

---

[6] The petitioner did not receive a copy of the rejection notice until January 31, 2007, because he was in transit. See Pet's Ex. II at Att.11.

1) he was not allowed to review the written statements of staff that were used as evidence against him, nor was he permitted to call these witnesses to testify on his behalf;

2) he was prevented from confronting witnesses and to test the veracity of the witnesses who made conflicting statements or reports;

3) he did not commit the charge to which he was found guilty;

4) he was denied the right to have Counselor Alicia present as a witness during his DHO hearing; and

5) the decision of the DHO was speculative and predetermined.

**B.   The Government's Response**

In its response, the government asserts that relief should be denied because:

1) the petitioner failed to exhaust administrative remedies;

2) the petitioner received all the process he was due;

3) the evidence is sufficient to support the DHO's findings;

4) the DHO was fair and impartial;

5) the petitioner's staff representative acted appropriately; and

6) the petitioner's remaining claims are without merit.

**C.   The Petitioner's Reply**

As to the merit of his claims, in reply to the government's response, the petitioner reiterates the claims made in the complaint. However, as to the government's assertion that his claims are not exhausted, the petitioner asserts that he followed the proper administrative procedures and made a good faith effort to have his claims reviewed by through the BOP's administrative process. Thus, the petitioner essentially argues that the BOP's improper rejection of his administrative remedies

6

deems those remedies exhausted.

### III. Analysis

**A. Exhaustion of Administrative Remedies**

A federal prisoner challenging a disciplinary proceeding under § 2241 must exhaust his administrative remedies prior to filing suit. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004). Moreover, the "[f]ailure to exhaust may only be excused upon a showing of cause and prejudice." Id.

With regard to disciplinary actions, the exhaustion of administrative remedies is initiated by first filing an appeal of the disciplinary action with the Regional Office within 20 days of receiving written notification of the disciplinary action. See 28 C.F.R. § 542.14(d)(2). If unsatisfied with that response, the petitioner may file a file an appeal with the Central Office within 30 days of the date the Regional Director signed the response. Id. Where an appeal is rejected at the Regional Level, and the inmate is not given the opportunity to correct the defect and resubmit, the inmate may appeal that rejection to the Central Office. See 28 C.F.R. § 542.17(c). The Central Office may affirm the rejection, may direct the submission be accepted at the lower level, of may accept the submission for filing. Id. "Appeal to the General Counsel is the final administrative appeal." See 28 C.F.R. § 542.15(a).

Here, the government argues that the petitioner failed to exhaust his administrative remedies because those remedies were rejected. For the reasons set forth below, the undersigned disagrees and finds that the petitioner has exhausted his administrative remedies.

In this case, the petitioner submitted an appeal of his disciplinary proceeding to the Regional Office. The initial appeal was rejected because it was not on the proper form and because the

petitioner submitted too many continuation pages. However, the petitioner was given 10 days to correct the defects and resubmit his appeal. Due to no fault of the petitioner's, the petitioner did not receive a copy of the rejection notice until after the 10 day time period had already expired. That fact is confirmed by petitioner's counselor.

Shortly after receiving the rejection notice, the petitioner resubmitted his appeal on the proper form and attached a letter from his counselor verifying that the petitioner did not receive the rejection notice in a timely manner and requesting that the petitioner be given additional time to respond. The Regional Office, without explanation, considered the petitioner's resubmission a second appeal, which it deemed untimely because it was received more than 20 days after the petitioner received notice of the disciplinary findings.[7] The November 2006 submission though, was clearly not a new appeal, it was a resubmission in response to the initial rejection notice and its timeliness should have been evaluated on that basis. Given that the petitioner clearly did not receive the initial rejection letter in a timely manner, which fact has been verified in writing by staff, and the petitioner filed his resubmission within 10 days of receiving the rejection notice, the petitioner's resubmission should have been considered on the merits.

Moreover, when the petitioner filed an appeal of his second rejection to the Central Office, the petitioner very clearly notified the Central Office that he was resubmitting the original appeal and

---

[7] The second rejection also stated that the petitioner did not submit a signed letter from staff verifying why the submission was untimely. However, that defect would clearly be correctable and the petitioner would have then been entitled to correct the defect. See 28 C.F.R. § 542.17(b) ("If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal."). Thus, if that had been the only defect in the appeal, petitioner would have been given additional time to correct the defect. However, it appears that because the Regional Office also determined that the petitioner's appeal was untimely, he was not given the opportunity to make any correction to his appeal.

8

explained the reasons why it was filed outside the 10 day time period.  Despite the petitioner's clear explanation of events, the Central Office erroneously concurred with the findings of the Regional Office.  At this point, the petitioner's administrative remedies were exhausted, as he had no other avenue for relief within the BOP's administrative process.  Thus, the petitioner took all the appropriate steps to exhaust his administrative remedies in a timely and appropriate manner.  The rejection of those remedies, however, was clearly improper, leaving the petitioner with no further recourse within the administrative process.  Thus, the undersigned finds that the petitioner has exhausted his administrative remedies with regard to the claims raised in the instant petition.

**B.    Merits of Petitioner's Claims**

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system.  See 18 U.S.C. § 4042.  Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States.  § 4042(a)(3) (emphasis added).  Therefore, the BOP has promulgated rules for inmate discipline.  See 28 C.F.R. § 541.10, et seq.

Moreover, prison disciplinary proceedings are not part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings.  Wolff v. McDonnell, 418 U.S. 539, 556,  94 S.Ct. 2963, 2975 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution").  However, inmates are entitled to some due process protections.  Id.  Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and

9

reasons for disciplinary action. Id. On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. Id at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 117 S.Ct. 1584 (1985).

In this case, it is clear that the petitioner received all the due process to which he was entitled. It is undisputed that petitioner received all of the due process safeguards delineated in Wolff. The crux of the petitioner's claim is that he was not able to confront and cross-examine witnesses and that he was denied the right to present Counselor Alicia as a witness. However, those are simply not rights to which the petitioner is entitled in a prison disciplinary proceeding, particularly in this case where written statements were given, and there is no evidence that the petitioner ever requested Counselor Alicia be called or that Counselor Alicia could have contributed any additional relevant evidence. See 28 C.F.R. § 541.17(c) ("The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO."); Ramer v. Kerby, 936 F.2d 1102, 1104 (10th Cir. 1991 (citing Wolff v. McDonald, 418 U.S. at 566) (DHO is not required to call every witness a prisoner requests if the testimony would be irrelevant, cumulative or otherwise unnecessary).

To the extent that the petitioner argues there was insufficient evidence to sustain the guilty finding, that claim is also without merit. The evidence presented to the DHO consisted of an incident report in which the reporting officer charged that the petitioner pushed and kicked him during a struggle in which the petitioner was trying to dispose of contraband. The reporting officer also alleged several injuries as a result. In addition, the written testimony of the other eye witnesses

supported the reporting officer's statement of events, as did the photographs of the officer's injuries. Although the petitioner denied the charges, there was clearly some evidence to support the finding of the DHO.

Finally, the Court finds no merit to the contention that the DHO was not fair and impartial, or that his decision was speculative. See Wolff, 418 U.S. at 570-71 (a prisoner is entitled to have the charges against him decided by a fair and impartial tribunal). The only evidence the petitioner provides to support these claims is that the DHO stated that if the petitioner was innocent, he would have defended himself when first notified of the charges. However, that is only a small part of the reasons for the DHO's decision. As noted above, the DHO considered the incident report, the written statements of the eyewitnesses, photographs of the officer's injuries and petitioner's own statements which supported the officer's version of the events. Considering the totality of the circumstances, and the overwhelming evidence against the petitioner, the questioned statement about petitioners' failure to defend himself is simply not sufficient to show that the DHO's decision was speculative, unfair or impartial.

## IV.   Recommendation

For the foregoing reasons, the undersigned recommends that the petitioner's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result

in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt, to his last known address on the docket, and to counsel of record via electronic means.

DATED: August 15, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE